IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Carole Ann Sawyer,<br>*On behalf of herself and all others similarly situated.*<br><br>Plaintiff,<br><br>v.<br><br>Tidelands Health ASC, LLC,<br><br>Defendant. | Case No.: 2:19-cv-1612-SAL<br><br>**OPINION AND ORDER** |

This matter is before the Court for review of the July 26, 2021 Report and Recommendation of United States Magistrate Judge Molly H. Cherry (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 45]. In the Report, the Magistrate Judge recommends that Defendant's motion for summary judgment, ECF No. 32, be granted. *Id.* Plaintiff filed timely objections to the Report, ECF No. 48. Defendant replied to the objections, ECF No. 49, and Plaintiff filed a sur-reply, ECF No. 51. The matter is ripe for ruling. For the reasons outlined herein, the Court adopts the Report in its entirety.

## BACKGROUND

In the Report, the Magistrate Judge set forth the factual background of this action thoroughly. The Court adopts this background in full without a recitation.[1]

---

[1] No party specifically objected to the Magistrate Judge's factual recitation.

**REVIEW OF A MAGISTRATE JUDGE'S REPORT**

The Court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See id.*; Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which the party has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the pleading or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing

*Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

Plaintiff's specific objections are as follows:

1. The Magistrate Judge erred by finding Defendant's Wage Deduction Policy ("WDP") does not violate the South Carolina Payment of Wages Act ("SCPWA").

2. The WDP is unenforceable because it is unconscionable.[2]

3. The Magistrate Judge erred by engaging in improper factual findings in recommending dismissal of the Family Medical Leave Act (FMLA) claims.

## DISCUSSION

**I.     The Magistrate Judge correctly found the WDP does not violate the SCPWA.**

**A.   The WDP satisfied the notice provisions of the SCPWA.**

Plaintiff contends Defendant's WDP violates the SCPWA because Defendant failed to comply with the statutory notice requirements. [ECF No. 48, pp.5–10]. S.C. Code Ann. § 41-10-30(A) provides:

> Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs. The employer has the option of giving written notification by posting the terms conspicuously at or near the place of work. Any changes in these terms must be made in writing at least seven calendar days before they become effective. This section does not apply to wage increases.

---

[2] Plaintiff did not raise the unconscionability issue before the Magistrate Judge, so the Report does not address the issue. However, as part of its *de novo* review, this Court will consider the argument. *See United States v. George,* 971 F.2d 1113, 1118 (4th Cir. 1992), *as amended* (Aug. 12, 1992) ("We believe that as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.").

S.C. Code Ann. § 41-10-30. This statute requires an employer to notify an employee of any deductions that will be made from their wages at the time and place of hiring. *Bennett v. Lambroukos*, 303 S.C. 481, 483, 401 S.E.2d 428, 430 (Ct. App. 1991).

First, Plaintiff argues that, because she signed the WDP at her orientation after she accepted her job, Defendant failed to provide notice in writing "at the time of hiring." [ECF No. 48, pp.5–6]. As Plaintiff points out, the SCPWA is a notice statute, "intended to provide the employee with the information requisite to make an educated decision whether or not to accept employment." *Carolina All. for Fair Employment v. S.C. Dep't of Labor, Licensing, and Regulation*, 337 S.C. 476, 491 (Ct. App. 199).

Plaintiff cites no authority to support the position that notice is strictly required before acceptance of an employment offer. The Court finds that Defendant provided notice of the WDP at the "time of hiring" by having Plaintiff sign the WDP on her first day of work during her orientation. Plaintiff received notice of the WDP on her first day of work, so she had not yet worked under the impression that there was no deduction policy. Plaintiff could have decided not to work for Defendant at orientation if she did not want to accept the WDP. Had she left at that point, she would never have labored under the misunderstanding that there was no wage deduction policy. Defendant provided notice of the WDP at the "time of hiring" as required by S.C. Code Ann. § 41-10-30.

Next, Plaintiff contends the notice violated the statute because it did not notify Plaintiff of the time that the deduction would be taken. [ECF No. 48, p.7]. The statute does not require an employer to notify an employee of the specific time or date a deduction will be taken. The statute requires an employer to notify an employee in writing at the time of hiring "the deductions which will be made from the wages." S.C. Code Ann. § 41-10-30(A). It does not require the employer

4

to notify the employee *when* the deductions will be made from the wages. *Ross v. Ligand Pharmaceuticals, Inc.* does not create such a requirement. In *Ross*, the South Carolina Court of Appeals held that an incentive plan with estimated payment dates that served no purpose failed to provide "time and date of payment" under the statute. 337 S.C. 476, 486, 523 S.E.2d 795, 800 (Ct. App. 1999). This holding does not create a requirement that an employer notify an employee of the specific time a deduction will be taken. As Defendant points out, such a requirement would be illogical. An employer rarely knows for certain when an employee's last day of employment will be.

Plaintiff also contends that, to the extent the WDP constitutes a reduction in wages rather than a deduction from wages, Defendant failed to provide notice that Plaintiff's wages would be reduced seven days in advance. First, the Court is skeptical that the WDP could be considered a reduction in wages rather than a deduction. In fact, Plaintiff's position is that the WDP constitutes a deduction. [ECF No. 48, p.6]. Plaintiff only argues in the alternative that, if the Court were to consider the WDP a reduction, it would still violate the SCPWA. *Id.* at 9. The Court makes no such finding. However, even assuming *arguendo* that the WDP could be considered a reduction, Defendant's notice was sufficient. As previously discussed, Plaintiff signed the WDP on her first day of work. Plaintiff does not allege Defendant changed the terms of the WDP after she signed it. The notice provided on Plaintiff's first day of work occurred far more than seven days before her last paycheck was allegedly "reduced."

**B. The WDP does not amount to a garnishment.**

Plaintiff contends the Magistrate Judge erred by finding the WDP does not amount to a garnishment. [ECF No. 48, pp.10–11]. Plaintiff argues that the WDP is a *de facto* garnishment that violates S.C. Code Ann. § 37-5-104 and 15 U.S.C. § 1673. According to Plaintiff, the statutes

apply to the WDP because the arrangement is a sale of services where the debt is payable in installments, making the WDP a "consumer credit sale." [ECF No. 51-1, p.3].

Section 37-5-104 of the South Carolina Code is a limitation on a creditor's remedies that prohibits a creditor from attaching the unpaid earnings of a consumer debtor by "garnishment or like proceeding." S.C. Code Ann. § 37-5-104. The statute applies only to "actions or other proceedings to enforce rights arising from consumer credit sales, consumer leases, consumer loans, and consumer rental-purchase agreements." S.C. Code Ann. § 37-5-102.

Assuming *arguendo* the WDP arrangement is a "consumer credit sale," Defendant has not initiated any "action" or "other proceeding" to enforce its rights under the WDP. Instead, Defendant made a deduction or reduction in Plaintiff's pay, as contemplated and authorized by S.C. Code Ann. § 41-10-30, *et seq.* Section 37-5-104 proscribes actions or other proceedings to enforce rights arising from consumer credit sales. Because Defendant did not initiate an action or other proceeding to enforce its rights arising from the WDP, the Magistrate Judge was correct in finding the deduction or reduction did not amount to a garnishment under South Carolina law.

Similarly, 15 U.S.C. § 1673 defines "garnishment" as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C. § 1673. As the Magistrate Judge correctly noted, there is no evidence in the record of any legal or equitable action filed or judgment rendered that could be considered a garnishment. [ECF No. 45, p.27]. The WDP does not amount to an unlawful garnishment under state or federal law.

**II.     The WDP is not unconscionable.**

Plaintiff argues the Court should find the WDP to be unenforceable because it is unconscionable. [ECF No. 48, pp.11–15]. In South Carolina, unconscionability is defined as the

6

absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them, and no fair and honest person would accept them. *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.,* 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004); *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24–25, 644 S.E.2d 663, 668 (2007). "Absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process in the contract at issue." *Simpson*, 373 S.C. at 24–25, 644 S.E.2d at 668. In determining whether a contract was tainted by an absence of meaningful choice, courts should consider the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause. *Id.*

Plaintiff asserts that Defendant's employees had no choice but to sign the WDP because it is required of every Tidelands employee. [ECF No. 48, p.12]. Further, Plaintiff contends that, because Tidelands operates all hospitals in Georgetown County, most Georgetown residents have no choice but to sign the policy if they are seeking employment in the medical field. *Id.* Plaintiff also argues that the withholding of wages at termination is a significant injury to employees and that there is a significant disparity in bargaining power. *Id.*

Under general principles of South Carolina contract law, an adhesion contract is a standard form contract offered on a "take-it-or-leave-it" basis with terms that are not negotiable. *Munoz v. Green Tree Fin. Corp.,* 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001). Adhesion contracts, however, are not *per se* unconscionable. *Simpson*, 373 S.C. at 27, 644 S.E.2d at 669. Therefore, the fact that the WDP is an adhesion contract is merely the beginning point of the analysis. *Lackey*

*v. Green Tree Fin. Corp.,* 330 S.C. 388, 395, 498 S.E.2d 898, 902 (Ct. App. 1998). Unconscionability "requires a greater showing." *Id.* To show that the WDP is unconscionable, Plaintiff must show that its terms are so oppressive that no reasonable person would make them, and no fair and honest person would accept them. *Id.*

Here, Plaintiff fails to show that the WDP is unconscionable. As previously discussed, the SCPWA contemplates and authorizes employers to make deductions and reductions to wages so long as its notice requirements are observed. Defendant complied with those notice requirements in this case. Even in the presence of unequal bargaining power, the terms of the WDP are not so oppressive as to be unconscionable. Further, Plaintiff signed the WDP at the time of her hiring. A person who can read is bound to read an agreement before signing it. *Hood v. Life & Cas. Ins. Co. of Tennessee,* 173 S.C. 139, 175 S.E. 76 (1934). Any argument that Plaintiff was surprised by the WDP is therefore unpersuasive. The Court finds that the WDP is not unconscionable.

### III. The Magistrate Judge correctly found that Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim.

Plaintiff argues the Magistrate Judge erred by (1) finding Plaintiff's absences on July 24, 2018, and July 30, 2018, were unrelated to Plaintiff's approved FMLA leave and (2) finding Plaintiff failed to show any of the three alleged instances of interference caused harm. [ECF No. 48, p.18].

To make out an interference claim under the FMLA, an employee must demonstrate that (1) she was entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused harm. *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). As the Magistrate Judge noted, the undisputed evidence shows that Plaintiff applied for intermittent FMLA leave on May 17, 2018, for a heart condition and hypertension. [ECF No. 45, p.12]. Defendant approved that leave on May 23, 2018, for a period starting May 22, 2018, and ending May 19, 2019. *Id.* Plaintiff received written disciplinary actions for three

8

unscheduled absences after she applied for FMLA leave in 2018. *Id.* The Magistrate Judge stated that the unscheduled absences occurred on May 20, July 24, and July 30 of 2018. *Id.* Plaintiff asserts that these dates are not correct. Instead, the absences occurred on May 20, July 30, and August 1. [ECF No. 48, p.16, n.7]. Because the unscheduled absences took place within the approved FMLA leave period either way, the difference in dates does not affect the Court's analysis. For sake of clarity, the Court refers to Plaintiff's dates and discusses the Report as if it had referred to the correct dates.

The Magistrate Judge found that Plaintiff established a question of fact as to whether the May 20 absence was protected FMLA leave. *Id.* at 13. Neither party specifically objected to that finding. However, the Magistrate Judge found that neither of the other two absences was related to Plaintiff's approved FMLA leave. *Id.* at 14. The Magistrate Judge went on to find that no harm or prejudice to Plaintiff resulted from any of the three written disciplinary actions. *Id.* at 15, n.5. Accordingly, the Magistrate Judge concluded that Plaintiff failed to raise a genuine dispute of material fact on her FMLA interference claim. *Id.* at 16.

This Court agrees with the Magistrate Judge's finding that the three written disciplinary actions related to Plaintiff's unscheduled absences did not cause harm or prejudice to the Plaintiff. It is therefore unnecessary for the Court to determine whether the July 30 or August 1 absences were related to Plaintiff's approved FMLA leave. As the Magistrate Judge correctly noted, Plaintiff remained employed and was given full benefits until her termination in August of 2018. [ECF No. 45, p.15]. Plaintiff's termination in August of 2018 was based on two independent grounds. First, Plaintiff's discharge letter states that she was terminated for accumulating two or more Class II written corrective actions in her career, which results in discharge according to Tidelands Health

9

policy. [ECF No. 32-2, p.50]. The letter goes on to state: "*Additionally*, this is your third written corrective action within 24 months." *Id.* (emphasis added).

While Plaintiff's unscheduled absences on the dates in question form the basis for her three written corrective actions within 24 months, the two Class II written corrective actions she received in her career are unrelated to the alleged FMLA interference. On October 9, 2012, Plaintiff received her first Class II written corrective action for failing to renew her basic life support certification. [ECF No. 32-2, p.46]. On August 28, 2018, Plaintiff received her second Class II written corrective action for "intimidating, coercing, harassing, or interfering behavior with respect to co-workers, patient's guests, and other customers." *Id*. According to the corrective action counseling form, Plaintiff loudly threatened to go find a graduate nurse on orientation and "beat her ass." *Id.* The form states, "this is the second class II in your file. Class II written corrective actions do not expire. Accumulation of two 'Level II' corrective actions at any time during employment will result in discharge from employment with Tidelands Health per the Employment Corrective Action Policy." Plaintiff was terminated the same day. [ECF No. 32-2, p.50]. The undisputed evidence in the record shows that Plaintiff's termination was independently based on corrective actions unrelated to the alleged FMLA interference. Accordingly, Plaintiff cannot show the alleged interference caused her to be terminated.

Finally, Plaintiff argues she suffered harm because the written corrective actions discouraged her from taking leave. [ECF No. 48, p.19]. Plaintiff cites *McNeill v. Fayetteville State University,* arguing that displeasure from a supervisor can cause harm when it reasonably discourages an employee from taking FMLA leave and causes her to structure her leave differently. No. 5:17-CV-609-BR, 2018 WL 5291858, at *5 (E.D.N.C. July 27, 2018), *report and recommendation*

*adopted sub nom. McNeill v. Fayetteville State Univ.,* No. 5:17-CV-609-BR, 2018 WL 4350176 (E.D.N.C. Sept. 12, 2018). *McNeill* is not binding on this Court, and it is distinguishable.

In *McNeill*, the Magistrate Judge issued a report and recommendation on a motion to dismiss under Rule 12(b)(6). The Magistrate Judge found that Plaintiff plausibly alleged she was harmed by an interference with her FMLA benefits based on the following: (1) the plaintiff alleged her employer verbally expressed her displeasure and anger with plaintiff's use of FMLA leave on more than one occasion; (2) the plaintiff alleged her employer telephoned her while she was on approved FMLA leave to inquire about the plaintiff's whereabouts despite the plaintiff's efforts to make arrangements before she took her approved leave; (3) the plaintiff alleged her employer called her while she was on approved FMLA leave and accused her of stealing from a vault, then contacted the police to identify the plaintiff as a potential suspect; (4) the plaintiff alleged she had to use more FMLA time due to stress resulting from her employer's animus; and (5) the plaintiff alleged her employer denied her shared leave request in violation of policy showing her employer's hostility to leave in general. *Id.* at *6–7. Based on these factual allegations, the Magistrate Judge found the plaintiff plausibly alleged harm by showing her employer was hostile towards the plaintiff's use of FMLA leave, that her employer made that hostility clear to the plaintiff, and that the plaintiff was therefore discouraged from taking FMLA leave. *Id.* at *6. The District Court agreed and adopted the report and recommendation. *McNeill v. Fayetteville State Univ.,* No. 5:17-CV-609-BR, 2018 WL 4350176 (E.D.N.C. Sept. 12, 2018).

Here, viewing the facts in the light most favorable to Plaintiff, she felt that she could not stay home when she was sick because of the written corrective actions she received. [ECF No. 48, p.19]. Plaintiff also felt that she was singled out for disciplinary action because her supervisors did not like accommodating her FMLA leave. *Id.* Plaintiff's showing falls far short of the

11

allegations held to state a claim in *McNeill*. Unlike the plaintiff in *McNeill*, who was subjected to serious hostility and harassment to discourage her from taking FMLA leave, Plaintiff merely received written corrective actions for unscheduled absences. Plaintiff testified that she felt she was singled out for disciplinary action because of her FMLA leave, but the record is devoid of any evidence to support that contention aside from Plaintiff's subjective declaration in her deposition.[3] Assuming without deciding that displeasure from a supervisor can cause harm when it reasonably discourages an employee from taking FMLA leave and causes her to structure her leave differently, Plaintiff fails to put forward evidence that would allow a reasonable jury to conclude she suffered such harm. Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim because no reasonable jury could conclude she suffered harm because of the alleged interference.

### IV. The Magistrate Judge correctly found that Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

Plaintiff argues the Magistrate Judge erred by finding Plaintiff failed to produce sufficient evidence to convince a reasonable factfinder that her termination was retaliatory. [ECF No. 48, p.20]. To establish a prima facie case of retaliation, a plaintiff must prove the following three elements: (1) "she engaged in a protected activity;" (2) "her employer took an adverse employment action against her;" and (3) "there was a causal link between the two events." *Adams*, 789 F.3d at 429 (4th Cir. 2015) (quoting *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (*en banc*)). Once the plaintiff establishes a prima facie case—and the parties do not dispute that Plaintiff has—the burden shifts to the defendant to proffer a legitimate, non-retaliatory explanation for the alleged retaliatory action. *Id.*; *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717

---

[3] Plaintiff also asserts the reasons for her termination are pretextual. [ECF No. 48, pp.19–20]. It is not clear to the Court how a pretext analysis is relevant to an interference claim, but to the extent it may be relevant, pretext is fully considered in section IV, *infra*.

(4th Cir. 2013).  The parties do not dispute that the defendant has met its burden of production to proffer a non-retaliatory explanation.

In her objections, Plaintiff appears to be under the impression that the Magistrate Judge considered two non-retaliatory explanations.  *See* [ECF No. 48, pp.21–22].  That is not the case.  The Magistrate Judge considered only one proffered explanation from Defendant: "namely, the receipt of two Class II written corrective actions over the course of her career. . ." [ECF No. 45, p.18].  Accordingly, there was no reason for Plaintiff to "address Defendant's claim that she received three written corrective actions in a 24-month period."  [ECF No. 48, p.21].

Plaintiff bears the ultimate burden to persuade the factfinder that Defendant's proffered reason for Plaintiff's termination—that she received two Class II written corrective actions over the course of her career—was merely a pretext for discrimination.  *See Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).  To survive summary judgment, "plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e, retaliation."  *Id.* (citations omitted).  A plaintiff can do so by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  The Court finds that Plaintiff fails to meet her burden, and summary judgment is appropriate.

Plaintiff argues she has sufficiently demonstrated pretext because nobody reported the incident that led to her second Class II corrective action until a month later, and Ranee Pender conducted an unfair and partial investigation on her own initiative.  [ECF No. 48, p.23].  The Court is not persuaded.  Plaintiff's contention that Ms. Pender conducted the investigation of her own initiative

is not supported by the record. In August 2018, Mary Martinez, a head nurse, reported to Ms. Pender that that Plaintiff had come to her ward a moth earlier and threatened to "beat the ass" of another nurse, Meghan Brantley. [ECF No. 32-4, p.118]. After learning of the incident from Martinez, Ms. Pender began investigating the allegation. *Id.* at 118-119. Plaintiff points out that Brantley, who was supposedly threatened, did not report the incident. [ECF No. 48, p.22]. This is not evidence of pretext. Brantley's written statement indicates that she was with a patient at the time and did not witness the incident. [ECF No. 32-2, p.48]. Instead, she learned of the incident from coworkers. *Id.* Plaintiff states the other two witnesses who provided statements did not report the incident at the time. [ECF No. 48, pp.22–23]. She also points out that Plaintiff disputes the nature of the incident and asserts that Ms. Pender made up her mind to issue the corrective action before conducting the investigation. *Id.* The Magistrate Judge properly considered and rejected these arguments. The job of the Court is not to appraise the employer's appraisal; rather, its "sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). The Magistrate Judge found, and this Court agrees, that Plaintiff fails to show that Defendant's rationale for termination—two Class II written corrective actions during her career—is a pretext for FMLA retaliation.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Court adopts the Report in its entirety and hereby incorporates the Report by reference. Defendant's motion for summary judgment, ECF No. 32, is GRANTED. Plaintiff's motion to certify class, ECF No. 26, and the consent motion to modify class definition, ECF No. 30, are therefore DENIED as MOOT.

IT IS SO ORDERED.

September 21, 2021
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge